UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

LIBAN SHARIF OMAR,

       Plaintiff,

v.

HEATHER WEYKER, *in her individual capacity as a St. Paul Police Officer*; JOHN BANDEMER, *in his individual and official capacities as a St. Paul Police Sergeant*; JOHN DOES 3-4, *in their individual and official capacities as supervisory members of the St. Paul Police Department*; THE CITY OF ST. PAUL,

       Defendants.

Case No. 16cv1113 (JNE/TNL)
ORDER

## I.    INTRODUCTION

Plaintiff Liban Sharif Omar alleges violations of his constitutional rights in an investigation that led to his indictment by a federal grand jury and subsequent arrest. He sues Defendants Heather Weyker, a police officer for the St. Paul Police Department in Minnesota; John Bandemer, a St. Paul Police Department sergeant who is alleged to have been Weyker's supervisor; John Does 3-4, who are allegedly supervisory St. Paul police officers; and the City of St. Paul ("St. Paul"). Weyker and Bandemer move to dismiss L. Omar's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and on absolute and qualified immunity grounds. Dkt. No. 41. St. Paul moves on behalf of the City of St. Paul and John Does 3-4 for judgment on the pleadings pursuant to Rule 12(c). Dkt. No. 47.

The investigation at the core of L. Omar's civil complaint targeted a suspected venture involving the sex-trafficking of minor girls across Minnesota, Tennessee, and Ohio. The investigation resulted in the criminal indictment of thirty people, mostly Somali, in the Middle

District of Tennessee in 2010-2011 ("Tennessee Case"). L. Omar alleges that Weyker and Bandemer fabricated evidence about him and others throughout the investigation, resulting in a tainted indictment that was further corrupted by Weyker's continuing deception, and causing his arrest and detention without probable cause.

Nineteen of L. Omar's co-defendants in the Tennessee Case bring separate suits similarly alleging constitutional violations, and a twenty-first person brings another related civil suit. The parties agreed to coordinated briefing on the Defendants' motions. The Court assumes familiarity with its fuller opinion in one of the related cases, *Osman v. Weyker, et al.*, No. 16cv908 ("Osman Opinion") (filed simultaneously herewith), and will not repeat that opinion's discussion verbatim here. L. Omar, coordinating with the other plaintiffs represented by his counsel, opposed the motions. *See* GBBS Pls.' Opp. to St. Paul Mot., Dkt. No. 52; GBBS Pls.' Opp. to DOJ Mot. to Dismiss, Dkt. No. 55.

The Court held a hearing on the motions on May 3, 2017, and now grants both motions.[1]

## II.    APPLICABLE STANDARDS

A motion to dismiss or a motion for judgment on the pleadings is appropriately granted "only when there is no dispute as to any material facts and the moving party is entitled to judgment as a [m]atter of law." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (citation omitted). To survive a Rule 12 motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *Haney v. Portfolio Recovery Assocs., LLC*, 837 F.3d 918, 924 (8th Cir. 2016), *as amended* (Dec. 27, 2016). *See also* Osman Op. 3-4.

---

[1] The United States also filed a Motion to Substitute and Dismiss, which was mooted by stipulation as recognized by the April 12, 2017 Order Permitting the GBBS Plaintiffs to Amend Complaints. Dkt. No. 62. Pursuant to that order, L. Omar filed a Second Amended Complaint [Dkt. No. 63] ("SAC"), which is thus the operative complaint subject to these Rule 12 motions.

2

## III. ALLEGATIONS

Most of the allegations are similar to those alleged by Osman and summarized and analyzed in the Court's order in that case. *See, e.g.*, Osman Op. 4-8. The Court briefly recounts some allegations in L. Omar's Second Amended Complaint and some facts gleaned from the Tennessee Case record.[2]

On October 20, 2010, L. Omar was indicted in the Tennessee Case. SAC ¶ 11. He was charged in ten counts. *See* Indictment ("Ind't"), *United States v. Omar*, No. 3:10cr260, Dkt. No. 3 (M.D. Tenn. Oct. 20, 2010); *see also* SAC ¶ 15 (alleging that he was charged with, "among other things, conspiracy to engage in sex trafficking of a minor . . . "). Two counts alleged participation in a sex-trafficking conspiracy in violation of 18 U.S.C. § 1591(a) (Counts 1 and 2). Two counts alleged recruitment or attempted recruitment of a minor (Jane Doe Two) for sex trafficking (Counts 12 and 13). Two counts, Counts 3 and 4, alleged obstruction of justice. Count 15 alleged that from May 20, 2006, through September 15, 2006, L. Omar conspired to transport stolen money and goods across state lines in violation of 18 U.S.C. § 2314. Ind't ¶¶ 100, 102-06. Count 16 alleged that he conspired to transport a stolen vehicle in interstate commerce in February 2010. Ind't ¶¶ 107, 110. Count 17 alleged that in February 2010, he conspired to use a false identification in connection with stealing and transporting a vehicle. Ind't ¶ 113. Finally, Count 18 alleged that from 2007 through September 2010, he conspired to commit credit card fraud. *E.g.*, Ind't ¶¶ 117, 123-24, 137. A first superseding indictment included the same charges against him. *See* SAC ¶ 16.

L. Omar was arrested on December 10, 2010, and detained until his release in March 2016. SAC ¶ 11.

---

[2] The Court may take judicial notice of public documents in the Tennessee Case record. *Greenman*, 787 F.3d at 887.

The sex-trafficking-related counts as against L. Omar exclusively involved the supposed witness-victim Jane Doe Two. SAC ¶ 17. "Jane Doe Two was the centerpiece of Weyker's fabricated case against Omar and others . . . ." SAC ¶ 18. Weyker was the lead investigator on the case, and Bandemer was her supervisor in the St. Paul Police Department. SAC ¶ 14. The indictment included allegations that L. Omar rented a hotel room in Brooklyn Center, Minnesota on April 24, 2009, "to facilitate the prostituting of Jane Doe Two." SAC ¶ 19; *see* Ind't ¶¶ 33-34. "It was alleged that Omar was present in the room." SAC ¶ 19; *see* Ind't ¶ 34. "In the initial interviews with Weyker, Jane Doe Two stated she did not know Omar," but "[s]ubsequent interviews with Weyker resulted in Jane Doe Two stating Omar 'looked familiar.'" SAC ¶ 21. "After more collaboration with Weyker, Jane Doe Two stated Omar was with her, drunk, and lying with her on her bed in the AmericInn hotel room on April 24, 2009." *Id.* L. Omar did not know Jane Doe Two before the indictment and was never in any hotel room with Jane Doe Two. SAC ¶ 22. "Omar never conspired with anyone to have Jane Doe Two engage in commercial sex. . . . Fabricated evidence formed the basis of this false allegation against Omar." SAC ¶ 27. "There was never any such conspiracy and Omar never engaged in any attempt to have Jane Doe Two engage in commercial sex." SAC ¶ 20.

In addition, the charges that L. Omar "attempted to influence witnesses or victims to impede the case" were baseless. SAC ¶ 19. "There was no influencing of witnesses. Fabricated evidence formed the basis of false allegations against Omar." SAC ¶ 20.

In early 2012, as the parties in the Tennessee Case prepared for trial to begin in March, the district court granted a motion to sever some of the counts, including Counts 15 through 18, to be tried later. *United States v. Omar*, No. 3:10cr260, Dkt. No. 1395 (M.D. Tenn. Feb. 16, 2012). In addition, L. Omar and some other defendants elected to be severed from the

4

defendants who were preparing for trial on sex-trafficking-related charges. *United States v. Adan*, 913 F. Supp. 2d 555, 559 (M.D. Tenn. 2012); *see also* SAC ¶ 37.

In that Spring 2012 criminal trial, the jury acquitted six defendants fully but convicted three defendants on some counts. SAC ¶ 38. The district court then granted Federal Rule of Criminal Procedure 29 motions for judgments of acquittal by the three convicted defendants, on the basis of a variance. *See* SAC ¶ 38; *Adan*, 913 F. Supp. 2d at 579.

After the trial, L. Omar moved for release from custody, and in February 2013, he was released on conditions. SAC ¶ 51. The district court's detention decision, however, was reversed on appeal. SAC ¶ 52; *see United States v. Fahra*, No. 13-5296, Dkt. No. 61-1 (6th Cir. Dec. 18, 2013) (submitted in this case at DOJ Reply Ex. BB). L. Omar "was consequently falsely imprisoned again on March 26, 2014." SAC ¶ 52. The appeals court found that, among other facts, the weight of the evidence—including testimony and evidence presented at the detention hearings, and testimony at the Spring 2012 trial—and L. Omar's history and characteristics supported his continued detention. *See* DOJ Reply Ex. BB at 6-8. In March 2016, the Sixth Circuit decided an appeal of the district court's order granting the Rule 29 motions. *See* SAC ¶ 53; *United States v. Fahra*, 643 Fed. Appx. 480 (6th Cir. Mar. 2, 2016). L. Omar was then released from custody on March 4, 2016. SAC ¶ 53.[3]

Like Osman, L. Omar alleges that the charges of a wide-ranging sex-trafficking conspiracy were baseless; that Weyker fabricated "the overwhelming majority of material evidence supporting his indictment for sex trafficking," SAC ¶ 29; that Weyker manipulated and

---

[3] The record reflects that L. Omar was released on conditions on that date. *United States v. Omar*, No. 3:10cr260, Dkt. No. 3792 (M.D. Tenn. Mar. 4, 2016). On March 8, 2016, the government moved to dismiss all remaining charges against all remaining defendants, and on March 10, the district court granted the motion and vacated all terms and conditions of supervised release that had been imposed. *See id.* at Dkt. Nos. 3796, 3798.

5

coerced Jane Doe witnesses, including Jane Doe Two, into lying, *e.g.*, SAC ¶¶ 28, 31, 33, 39, 41; that Weyker was motivated to falsify evidence by a desire for professional success, *see* SAC ¶ 14; and that indications of Weyker's fabrication included her rough notes, SAC ¶¶ 34, 40-41, questions surrounding Jane Doe Two's age, SAC ¶ 35, questions surrounding Jane Doe Two's April 2009 trip to Nashville, SAC ¶¶ 25, 34, and the results of the Spring 2012 trial, SAC ¶ 38. Also like Osman, L. Omar's complaint repeatedly cites to remarks about Weyker and the case by the district and appellate courts in the Tennessee Case. SAC ¶¶ 25, 30 n.1, 34, 40, 43-44.

## IV. SUMMARY OF ARGUMENTS

A summary of the parties' arguments is included in Section IV of the Court's simultaneously filed opinion in *Yusuf v. Weyker, et al.*, No. 16cv1012. L. Omar is represented by the same counsel as Yusuf.

## V. LEGAL ANALYSIS

As explained fully in the Osman Opinion, pursuant to *Manuel v. City of Joliet*, 137 S. Ct. 911 (Mar. 21, 2017), L. Omar's claims sound, if at all, in the Fourth Amendment, not the Fifth or Fourteenth. *See* Osman Op. 11-13; *see also id.* at 17-22. His complaint is that "[b]ut for the testimony and other evidence falsely manufactured by Weyker and Bandemer, no probable cause existed to detain or otherwise restrict Omar's liberty." SAC ¶ 1; *see also* SAC ¶ 39. In other words, he complains "that a form of legal process resulted in pretrial detention unsupported by probable cause." *Manuel*, 137 S. Ct. at 919. So "the right allegedly infringed lies in the Fourth Amendment." *Id.* A "constitutional division of labor" applies to claims like L. Omar's, *id.* at 920 n.8 (referring to *Gerstein v. Pugh*, 420 U.S. 103 (1975), and *Albright v. Oliver*, 510 U.S. 266 (1994)), and because he challenges his pretrial detention, his claim is under the Fourth Amendment. L. Omar's claims for substantive due process violations under the Fifth or

6

Fourteenth Amendments therefore fail. *See Manuel*, 137 S. Ct. at 919-20; *Albright*, 510 U.S. at 271 (plurality opinion).[4]

Under the Fourth Amendment analysis, the Court must decide whether L. Omar plausibly alleges that the Defendants violated his right to be free from unreasonable seizure by arresting and detaining him without arguable probable cause, based on fabricated evidence.[5]

To evaluate whether a person's Fourth Amendment right has been violated by an arrest pursuant to a warrant that lacked probable cause, the court applies the analysis set out in *Franks v. Delaware*, 438 U.S. 154 (1978). *See Hawkins v. Gage Cty.*, 759 F.3d 951, 958-59 (8th Cir. 2014); *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 101, 105 (1st Cir. 2013). Thus, the court considers whether there were deliberately or recklessly false statements made in support of a finding of probable cause and whether those statements were necessary to the finding of probable cause. *See Franks*, 438 U.S. at 156; *Williams v. City of Alexander*, 772 F.3d 1307, 1311 (8th Cir. 2014). The court also considers whether material information was omitted with the intent to mislead or with reckless disregard as to whether the omission was misleading. *See Williams*, 772 F.3d at 1312; *Hawkins*, 759 F.3d at 959. If, setting aside the false statements (or adding in the omitted information), there was no probable cause to arrest, then the arrest violated the Fourth Amendment. *See Williams*, 772 F.3d at 1312-13; *Hawkins*, 759 F.3d at 958-59; *Hernandez-Cuevas*, 723 F.3d at 105. Probable cause "exists when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has

---

[4] As explained in a footnote in the Court's simultaneously filed order in *Yusuf v. Weyker, et al.*, No. 16cv1012, the attempt to distinguish *Albright* in his opposition papers, which were filed without the benefit of the *Manuel* decision, is not persuasive in light of the *Manuel* Court's clear interpretation of *Albright*. *See Manuel*, 137 S. Ct. at 918.

[5] Because § 1983 and *Bivens* claims are analyzed similarly, the Court does not reach the question of whether L. Omar's claim should have been brought under § 1983 or *Bivens*. *See* Osman Op. 13-17.

7

committed or is committing an offense." *Greenman v. Jessen*, 787 F.3d 882, 888 (8th Cir. 2015) (citation omitted).

Where a plaintiff alleges that she was arrested without probable cause and the defendant asserts the qualified immunity defense, courts ask whether there was "*arguable* probable cause to arrest." *Stewart v. Wagner*, 836 F.3d 978, 984 (8th Cir. 2016) (citing *New v. Denver*, 787 F.3d 895, 899 (8th Cir. 2015)) (applying this standard to a Fourth Amendment claim for detention based on allegedly false and incomplete information in a probable cause statement). "[T]he issue for immunity purposes is not probable cause in fact but arguable probable cause, that is, whether the officer should have known that the arrest violated plaintiff's clearly established right." *New*, 787 F.3d at 899. "It is clearly established that the Fourth Amendment requires a *truthful factual showing* sufficient to constitute probable cause before an arrest warrant can issue." *Peterson v. City of Plymouth*, 60 F.3d 469, 477 (8th Cir. 1995) (emphasis added and citation omitted).

### a. Analysis of L. Omar's Claim Under the Fourth Amendment

In considering whether L. Omar plausibly alleges a Fourth Amendment violation, the Court disregards mere conclusory statements, focuses on well-pleaded factual allegations and accepts them as true, and applies its judicial experience and common sense. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The Court also properly considers the Tennessee Case court record in assessing the pleadings. *See, e.g.*, *Greenman*, 787 F.3d at 887.

L. Omar's core allegations are very similar to Osman's, including the ample citations to comments by the Tennessee Case district court and a related appellate decision. In the Osman Opinion, the Court examines several orders and memoranda by the district court and two separate Sixth Circuit Court of Appeals opinions concerning the Tennessee Case, some of which both Osman and L. Omar cite. *See* Osman Op. 25-33. In Osman's case, the Court found that

some of these statements by judicial officers are remarkable, and that taken all together along with other well-pleaded facts, they nudge Osman's Fourth Amendment claim as to Weyker over the *Iqbal* plausibility line. The Court notes that none of these judicial statements refer even obliquely to Bandemer. The Court further found that the fact that Osman was also indicted on charges of obstruction of justice relating to the prosecution of the allegedly fabricated sex-trafficking-conspiracy case does not *per se* doom her Fourth Amendment claim. *See* Osman Op. 35-37. L. Omar's case, however, is different.

Weyker and Bandemer argue that even if L. Omar plausibly alleges that Weyker fabricated evidence material to the indictment for sex-trafficking-related charges, the fact that he was also indicted in non-trafficking-related charges defeats his Fourth Amendment claim. They argue that L. Omar fails to plausibly allege that there was not probable cause to arrest him on the other crimes for which he was charged. *See* DOJ Br. 65-68. They point out in their reply papers that L. Omar and the other plaintiffs represented by the same counsel fail to address this argument at all. DOJ Reply 31-32.

L. Omar's complaint does not expressly acknowledge that he was charged in Counts 15 through 18 with crimes unconnected to any alleged sex-trafficking, and as noted, his opposition papers did not respond to Weyker and Bandemer's argument that his Fourth Amendment claim fails in light of that count.[6] L. Omar fails to plausibly allege—or even conclusorily state—that there was no probable cause to indict and arrest him in December 2010 on those four counts. The indictment included numerous specific allegations about L. Omar in support those counts.

---

[6] In his complaint, apparently referencing Counts 3 and 4, L. Omar alleges: "There was no influencing of witnesses. Fabricated evidence formed the basis of false allegations against Omar." SAC ¶ 20. The indictment alleged some specific acts by L. Omar in support of these two counts, but analysis of those charges is unnecessary, and L. Omar's allegations as to them are not dispositive, because he fails to allege a Fourth Amendment violation with regard to the clearly non-sex-trafficking-related charges in Counts 15 through 18.

9

For example, Count 15 alleges that on May 22, 2006, L. Omar and others went to a business in Nashville, Tennessee, and stole approximately $120,000 in cash, among other loot, and that a co-defendant transported the cash to Minnesota the next day. Ind't ¶¶ 102-03. And it alleges in support of Count 16 that L. Omar registered a stolen Cadillac Escalade with the Ohio Bureau of Motor Vehicles. Ind't ¶¶ 109-10. L. Omar does not allege that these allegations are false or that supported by fabricated evidence. The grand jury's indictment of him in those charges "conclusively determines the existence of probable cause" in those counts, *Kaley v. United States*, 134 S. Ct. 1090, 1097 (2014) (citation omitted), at least absent any plausible allegations that the indictments in those charges were tainted by fabrication of evidence.[7] Moreover, L. Omar's more general, conclusory allegations—*e.g.*, that "no probable cause existed to detain" him without the fabricated evidence, SAC ¶ 1—cannot overcome the hurdle posed by his indictment in these counts. Finally, the Court cannot reasonably conclude from the results of the trial of other co-defendants on other counts, or from the government's dismissal of all charges after an adverse appellate decision affirming the grant of Rule 29 motions on the basis of a variance, that there was no probable cause to indict L. Omar on any counts at all.

Therefore, L. Omar's complaint must fail. Even if there were no probable cause to arrest him based on the allegedly spurious sex-trafficking-conspiracy charges, there is no Fourth Amendment violation where there is probable cause to arrest "for the violation of some other law." *Greenman*, 787 F.3d at 889 (citation omitted); *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (holding that there is no Fourth Amendment violation if there is probable cause to arrest based on any criminal offense, even if the officer's subjective reason for arresting was a

---

[7] The Court further notes that one of his co-defendants pleaded guilty to the credit-card conspiracy charged in Count 18. *See United States v. Nur*, No. 3:10cr260, Dkt. No. 2870 (M.D. Tenn. Oct. 5, 2012).

different and unrelated offense); *Keil v. Triveline*, 661 F.3d 981, 986 (8th Cir. 2011). L. Omar "has failed to 'make out a violation of a constitutional right' in the first instance." *Greenman*, 787 F.3d at 888.

Defendants Weyker and Bandemer are entitled to qualified immunity. L. Omar has failed to plausibly allege a constitutional violation. Moreover, as to Bandemer, there are no well-pleaded facts that would support an inference that he directly fabricated evidence.

### b. Supervisory Liability

L. Omar also sues Bandemer and John Does 3-4 in their individual capacities as supervisors. He alleges that they were deliberately indifferent to or approved Weyker's and Bandemer's alleged violations of his constitutional rights. *See* SAC ¶¶ 45-46.

A supervisor sued in his or her individual capacity in a § 1983 or *Bivens* suit "is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677; *see also S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). "When a supervising official who had no direct participation in an alleged constitutional violation is sued for failure to train or supervise the offending actor, the supervisor is entitled to qualified immunity unless plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts." *Krigbaum*, 808 F.3d at 340 (citing *Livers*, 700 F.3d at 355). "This rigorous standard requires proof that the supervisor had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right. Allegations of generalized notice are insufficient." *Id.* The notice prong requires that "[t]o impose supervisory liability, other misconduct [allegedly giving the supervisor notice] must be very similar to the conduct giving rise to liability." *Id.* (quoting *Livers*, 700 F.3d at 356).

First, given the Court's conclusion that L. Omar has not adequately alleged a

11

constitutional violation by Weyker or Bandemer, the supervisory liability claims "automatically fail for lack of an underlying constitutional violation." *Mendoza v. U.S. Immig'n & Customs Enf't*, 849 F.3d 408, 420 (8th Cir. 2017) (citation omitted).

Moreover, L. Omar's complaint, which is very similar to Osman's complaint as to the supervisory liability allegations, likewise contains few allegations—and fewer well-pleaded facts—regarding supervisory liability. Like Osman, he alleges that Bandemer and the John Does had supervisory responsibility over Weyker, SAC ¶ 67; that the investigation was very important to the St. Paul Police Department vice unit, SAC ¶ 14; and that "[b]y at least February 15, 2012, these [supervisory] defendants had actual knowledge" of Weyker's fabrications based on a February 2012 memorandum-order at Dkt. No. 1392 and other district court orders, *id.* ¶¶ 43-44, 46. Like Osman, L. Omar cites *United States v. Mohamud*, No. 3:10cr260, 2013 WL 1935506, at *11 n. 6 (M.D. Tenn. May 9, 2013), and *United States v. Adan*, 913 F. Supp. 2d 555, 589 n.10 (M.D. Tenn. Dec. 19, 2012), in support of his notice allegations. SAC ¶¶ 43-44.

As explained in the Osman Opinion, these allegations do not sufficiently plead supervisory liability based on notice. *See* Osman Op. 37-41. Nor do they establish a pattern of unconstitutional acts by Weyker. Ignoring conclusory or unsupported allegations, L. Omar does not allege any other similar acts by Weyker or Bandemer before the Tennessee Case investigation that could show a pattern about which Bandemer (as Weyker's supervisor) or the John Does (as Weyker's and/or Bandemer's supervisors) personally knew.

The allegations fail to state a claim for supervisory liability, and Bandemer and John Does 3-4 are entitled to qualified immunity as to these counts.

c. **Municipal Liability**

L. Omar sues St. Paul as well as Bandemer and the John Does in their official capacities

for municipal liability under *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658 (1978). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694. "Instead," a municipality is liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." *Id*.

A plaintiff therefore must show that there is an "official" policy or a "custom or usage with the force of law." *Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016). A plaintiff must plead "allegations, reference, or language by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (citation omitted). "Misconduct among a municipality's employees must be 'continuing, widespread, [and] persistent' to establish such a custom." *Kelly*, 813 F.3d at 1075 (citation omitted). Also, "the municipality will not be liable unless policymaking officials exhibit '[d]eliberate indifference to or tacit authorization of such conduct . . . after notice to the officials of that misconduct.'" *Id.* at 1075-76 (citation omitted). The question is whether a "governmental policy or custom was the 'moving force' that led to the deprivation of [the plaintiff's] constitutional rights." *Speer v. City of Wynne*, 276 F.3d 980, 986 (8th Cir. 2002). Even if no individual employee is found liable, a municipality might be liable, but only where "the combined actions of multiple officials or employees may give rise to a constitutional violation." *Id.*

L. Omar does not adequately support his conclusory municipal liability allegations. He does not allege with well-pleaded facts that Weyker or other St. Paul Police Department employees fabricated evidence in other investigations, nor that policymaking officials in the department were aware of any previous incidents of fabrication of evidence. He does not allege

13

well-pleaded facts to support a theory that multiple St. Paul Police Department members—not even Weyker and Bandemer—combined to violate his rights. Nor does he allege facts that would demonstrate an official department *policy* that moved officers to fabricate evidence or coerce witnesses and mislead prosecutors and grand juries to secure indictments. He also does not plausibly allege any such *custom* because, among other reasons, he has not adequately alleged notice, as explained above. The supervisory defendants sued in their official capacities, and the City of St. Paul, are entitled to qualified immunity on these claims.

## VI. Conclusion

Defendants are entitled to qualified immunity on all counts, because L. Omar's complaint fails to plausibly allege a violation of his constitutional rights. The Court grants Defendants' motions and dismisses with prejudice. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1060-61 (8th Cir. 2013); *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 635 (8th Cir. 2010).

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants Heather Weyker and John Bandemer's Motion to Dismiss [Dkt. No. 41] is GRANTED.

2. Defendant City of Saint Paul's Motion for Judgment on the Pleadings [Dkt. No. 47] is GRANTED.

3. Plaintiff Liban Sharif Omar's Second Amended Complaint is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 9, 2017            s/ Joan N. Ericksen
                                                               JOAN N. ERICKSEN
                                                               United States District Judge